WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cheryl Cave, | No. CV-12-08169-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Cheryl Cave appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal.[2] (Doc. 14).

**I.   BACKGROUND**

On August 26, 2009, Plaintiff Cheryl Cave filed an application for disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act, alleging a disability onset date of August 10, 2009. (Tr. at 168). The Commissioner denied benefits on November 3, 2009, (Tr. at 84), and Plaintiff requested reconsideration, (Tr. at 88). Plaintiff was again denied benefits on February 12, 2010, (Tr. at 93), and she

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is substituted for Michael J. Astrue as Defendant. Fed.R.Civ.P. 25(d). For convenience, the Court will refer to the Acting Commissioner as the Commissioner.

[2] Plaintiff requested oral argument. Because the Court finds that oral argument would not aid in its decision-making process, the Court denies the request. *See* LRCiv 16.1(e).

appealed.

On May 6, 2011, Administrative Law Judge ("ALJ") Earl C. Cates, Jr. held a hearing on Plaintiff's claim. (Tr. at 32). Following the ALJ's unfavorable decision, (Tr. at 14), Plaintiff appealed to the Appeals Council. After the Appeals Council denied Plaintiff's request for review, (Tr. at 1), Plaintiff filed an appeal with this Court, (Doc. 1; Doc. 14).

## II.   DISABILITY

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B.   Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1.   First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an

adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's alleged onset date of August 10, 2009 and last insured date of December 31, 2011. (Tr. at 17). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of August 10, 2009. (Tr. at 19). The ALJ then found Plaintiff to have the following severe impairments: "degenerative disc disease of the lumbar spine, treated conservatively, spondylolisthesis, and hypertension." (*Id.*) Under step 3, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (Tr. at 20). The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was the ability to "perform sedentary work . . . sitting for 15 to 30 minutes at a time, standing for 10 to 15 minutes at a time, and walking for up to 100 feet at a time, with a sit stand option required throughout an eight hour work day, occasional lifting up to 5 to 6 pounds with the right hand and up to 8 pounds with the left hand, and lifting and carrying up to 10 to 14 pounds with both hands simultaneously, the need to avoid bending, twisting, and stooping." (*Id.*)

In step four, the ALJ determined that Plaintiff is capable of performing past

relevant work as a telephone triage nurse/nurse consultant. (Tr. at 24). Although the ALJ concluded that Plaintiff was thus not disabled, he also made alternative findings under step five. In step five, he considered the Plaintiff's age, education, work experience, residual functional capacity, and work skills from past relevant work, and determined that Plaintiff could perform a number of jobs in the national economy. (Tr. at 24-25).

### D.   Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III.   THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS

### A.   Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-

supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

### 1. Nonexamining Physician's Opinion as Substantial Evidence

A nonexamining physician's opinion combined with other evidence can be substantial evidence contradicting a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2. Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons

that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

## B. Background

### 1. Objective Imaging Studies

On October 20, 2008, Plaintiff underwent a lumbar spine MRI, the impressions of which were "[a]t L4-transitional L5, prominent degenerative disk disease and grade II spondylolisthesis with bilateral L4 spondylolysis, mild spinal stenosis and marked bilateral neural canal stenosis." (Tr. at 406-07). On February 11, 2009, Plaintiff underwent a lumbar spine x-ray, which showed at L4-S1 "marked degenerative disk disease, grade III spondylolisthesis with subluxation increasing in flexion and decreasing in extension and chronic bilateral L5 spondylolysis;" at L3-4 "minimal posterior subluxation of L3, slightly increased in extension and resolving in flexion," and a "2 x 1 cm sclerotic focus in far left superolateral sacral wing of unclear etiology." (Tr. at 408).

On January 5, 2011, Plaintiff underwent a lumbar spine MRI which showed "L5-S1 15 mm isthemic spondylolisthesis with severe bilateral osteogenic foraminal stenosis." (Tr. at 429).

### 2. Treating Physician Dr. Baumann

Dr. Baumann has been treating Plaintiff since February 11, 2009 when she reported for her initial visit with lower back pain. (Tr. at 417). At that time, his physical examination showed that Plaintiff had tenderness to palpation over her lower lumbar muscles, more significantly on the right side than on the left, and tenderness over the right sciatic notch. (Tr. at 418). Plaintiff had forward flexion of her lumbar spine and some discomfort, with severe pain upon extension. (Tr. at 418-19). She had a normal range of motion in her hips, knees, and ankles with no significant tenderness to palpation, and full strength in all of her muscles except for her right tibialis anterior, which was nearly full strength. (Tr. at 419). Her straight leg raising test was positive on the right side. (*Id.*)

Dr. Baumann diagnosed Plaintiff with Grade 2 L4-5 spondylolisthesis, right

greater than left lumbar radiculopathy, and mild dorsiflexion weakness of the right ankle. (*Id.*) He recommended epidural blocks to improve the pain. (*Id.*)

In subsequent visits during 2009, Dr. Baumann noted that epidural injections had given Plaintiff only a few weeks of relief and Plaintiff reported pain in her low back and radiating down her right side, with "shooting pain into her right hip down her right leg with numbness and tingling intermittently in her left leg." Plaintiff reported that lying down, medications, heat, injections, and sitting helped her pain, although prolonged sitting aggravated it. (Tr. at 413). Dr. Baumann diagnosed Grade 2/3 L4-S1 spondylolisthesis. (Tr. at 412-13).

On August 25, 2009, Dr. Baumann found that Plaintiff had tenderness to palpation over her lower lumbar as well as the right and left paraspinal regions. She had normal range of motion to flexion, "decrease to extension, lateral flexion, and rotation better than the previous appointment." (Tr. at 412). Her straight leg raise was negative for both sides, and she had full strength to her lower extremities. Dr. Baumann noted that Plaintiff's gait was "steady and strong without assistive devices." (Tr. at 412). The records from Plaintiff's continued treatments with Dr. Baumann show Plaintiff suffered from varying levels of pain, sometimes reporting pain on lumbar flexion and sometimes not. (Tr. at 426-28). Dr. Baumann consistently noted Plaintiff's opioid dependence, *see, e.g.*, (Tr. 425-28, 441-49), and sometimes ordered urine drug analysis, *see, e.g.*, (Tr. at 446-47). Her prescribed medications included, contemporaneously, morphine, Vicodin, Gabapentin, Flexeril, Lexapro, and Zantac. (*Id.*)

On November 16, 2010, Dr. Baumann completed a residual functional capacity questionnaire in which he listed Plaintiff's diagnoses as Grade 2/3 L4-S1 spondylolisthesis and lumbar facet syndrome, with a stable prognosis. (Tr. at 251). He listed as objective supporting findings a lumbar x-ray taken June 9, 2010, an MRI taken October 2008, and Plaintiff's constant lower back and leg extension pain. (*Id.*) He reported that Plaintiff could walk less than one city block without rest or severe pain, could sit only one hour at a time, could stand for 20-30 minutes at a time, would need to

1 walk for five minutes every 20-30 minutes, and would need to shift among sitting,
2 standing, or walking at will. (Tr. at 252-53). He also reported Plaintiff's pain would
3 constantly interfere with the attention and concentration needed to perform even simple
4 work tasks. (*Id.*) Plaintiff would need to take 5-10 minute unscheduled breaks every hour,
5 could occasionally lift up to 10 pounds, rarely twist, stoop, crouch, or climb ladders and
6 only occasionally climb stairs, and had significant limitations with reaching, handling, or
7 fingering. (Tr. at 253-54). Dr. Baumann assessed that Plaintiff would be likely be to miss
8 four days of work every month, and that his RFC assessment applied back to June 2008.
9 (Tr. at 254).

10 Dr. Baumann's 2010 and 2011 treatment records show Plaintiff was consistently
11 alert, interactive, and in no acute distress. (Tr. at 441-49). Plaintiff reported pain upon
12 flexion and extension of her lumbar spine and with rotation, but had full strength in her
13 arms and legs. (*Id.*)

**C. Discussion**

15 Plaintiff argues that the ALJ erred in rejecting the medical opinion of Dr.
16 Baumann, Plaintiff's treating physician, in favor of the opinions of nonexamining
17 consultant physicians. (Doc. 14 at 6). The ALJ concluded that Dr. Baumann's opinion
18 was not entitled to controlling weight, and gave it little weight, because it was
19 "inconsistent with the greater objective record, which shows [Plaintiff] can do a limited
20 range of sedentary work activity." (Tr. at 23). The ALJ also noted that Dr. Baumann's
21 opinion was inconsistent with his most recent treatment records, including a May 7, 2011
22 treatment record in which Dr. Baumann noted Plaintiff was not in acute distress, was
23 alert, and had full strength in her extremities. (Tr. at 23, 446).

24 Because Dr. Baumann is Plaintiff's treating physician, the ALJ was required to
25 provide clear and convincing reasons for rejecting his opinion, supported by substantial
26 evidence in the record. Dr. Baumann's own treatment notes showed that Plaintiff's pain
27 was well-controlled by medication and was alleviated by lying down, medications, heat,
28 and "TENS." *See, e.g.*, (Tr. at 446) (May 7, 2011 treatment record). Substantial record

evidence also existed in the opinions of Drs. Woodard and Griffith. Dr. Woodard was a nonexamining, consulting physician who reviewed the record evidence on October 9, 2009, and assessed that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk for a total of at least two hours in an eight-hour workday, sit for six hours in a workday, and unlimited pushing and pulling. (Tr. at 365-72). On February 11, 2010, Dr. Griffith, another nonexamining, consulting physician reexamined the record and agreed with Dr. Woodard's assessed RFC.[3] (Tr. at 401).

Plaintiff argues that Drs. Woodard and Griffith improperly based their opinions upon medical evidence prior to the alleged onset date. (Doc. 14 at 14-15). Although "[m]edical opinions that predate the alleged onset of disability are of limited relevance," *Carmickle*, 533 F.3d at 1165, the same cannot be said for medical *records*. Moreover, Dr. Baummann's opinion expressly relied upon records predating Plaintiff's alleged onset of disability date. (Tr. at 251). Fundamental fairness dictates that the ALJ can consider medical records underlying a medical opinion that Plaintiff offered in support of her disability claim.

The record evidence showed that Plaintiff's pain on medication was not severe. *See, e.g.*, (Tr. 330, 448) (reporting pain on a scale of 3-4 out of 10). Moreover, Plaintiff's own reported activities were inconsistent with Dr. Baumann's opinion. Plaintiff reported her typical day as making sure her kids were up for school, taking her daughter to her bus stop, watching news and checking e-mail, running errands such as going to the post office or grocery store, doing craft projects at home, watching TV, and helping her daughter with homework. (Tr. at 193). Plaintiff also reported ironing, dusting, washing dishes, making beds, and folding laundry. (Tr. at 195).

In sum, the opinions of Drs. Woodard and Griffith, Plaintiff's own reported daily activities, and Dr. Baumann's own objective findings constituted substantial record evidence contradicting Dr. Baumann's RFC assessment of Plaintiff, and the ALJ gave

---

[3] Plaintiff contends Dr. Griffith ignored contemporaneous medical records but offers no evidence supporting this speculation. (Doc. 14 at 5-6).

- 10 -

clear and convincing reasons for rejecting Dr. Baumann's opinion.

## IV. PLAINTIFF'S REPORTED SYMPTOMS

### A. Legal Standard

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

### B. Discussion

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to produce the Plaintiff's alleged symptoms, Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr. at 22). Plaintiff contends that the ALJ failed to point to specific findings showing clear and convincing reasons to discredit Plaintiff's subjective complaints. (Doc. 14 at 8-10). Specifically, Plaintiff contends that the ALJ cherrypicked statements from Plaintiff's function report to conclude Plaintiff could perform sedentary work. (*Id.* at 10).

Plaintiff completed a function report on September 4, 2009, in which she reported her daily activities as preparing her kids for school, taking her daughter to the bus stop, watching news, checking her e-mail, updating her bank account, running errands including trips to the post office and grocery store, doing craft projects at home, watching TV, helping her daughter with homework, and reading books in bed. (Tr. at 193). Plaintiff contends the ALJ ignored other statements in this report, for example Plaintiff's inclusion of sitting on a heating pad for 20-30 minutes as part of her daily activities. (*Id.*) But the fact that Plaintiff has to undertake some rest and treatment for her condition does not negate the physical demands required to undertake the balance of her daily activities. Furthermore, Plaintiff reported letting her pets in and out of the house, sometimes feeding them, and spending 30-60 minutes preparing meals each day. (Tr. at 193-95). Indeed, Plaintiff's only reported change in cooking habits after her alleged disability began was difficulty putting things in the oven. Plaintiff reported that she irons, dusts, washes dishes, straightens up the house, makes the bed, and folds laundry. (Tr. at 195).

Plaintiff also reported that she shops in stores for groceries, household items, gifts, pet food, and school needs 2-3 times per week for 1-2 hours, and drives her own car. (Tr. at 196). Significantly, Plaintiff reported her hobbies as including bowling, racquetball, and softball, and she reports that she "do[es] these things well and daily," although she then adds that she no longer can play racquetball, bowl, or take walks around the neighborhood. (Tr. at 197). Plaintiff takes her daughter to volleyball games weekly. (*Id.*)

Plaintiff stated that she could lift 5-10 pounds but sometimes lifting a gallon of milk hurt her back and that she can walk only 100-200 feet before needing to rest. (Tr. at 198). She reported renting a wheelchair when going to Disneyland, although it was not prescribed by a doctor. (Tr. at 199).

In terms of employment, Plaintiff stated that it was "difficult to get ready for work and put in a full day *in comfort*." (Tr. at 200) (emphasis added). Plaintiff also stated that although she resigned her position as an R.N., she remained a "per-diem employee with no guaranteed hours." (*Id.*) Similarly, in an October 14, 2009 psychological evaluation, Plaintiff reported working on a per diem basis doing data entry. (Tr. at 375). At that time, she also reported doing dishes, errands, working on crafts during the day and after dinner, cooking, doing chores, shopping, and driving. (*Id.*)

At the ALJ hearing on May 6, 2011, Plaintiff testified that she had recently applied for nurse triage jobs involving giving advice over the phone.[4] (Tr. at 43-44). She also testified that she could lift a gallon of milk with pain and could sit for 15 to 20 minutes at a time. (Tr. at 52-53). She further testified that she drives 15 miles sometimes, does dishes, and folds clothes. (Tr. at 59-60). The ALJ asked Plaintiff if she could do phone triage work with her skills, and Plaintiff replied that she could if she could move around every 10 or 15 minutes but she had not been to vocational rehabilitation. (Tr. at 66).

Plaintiff contends the ALJ erred in discounting her subjective complaints because the ALJ ignored her stated limitations on how long and often she can accomplish certain tasks. (Doc. 14 at 10). But Plaintiff did not provide concrete limitations. For example, for house and yard work she stated that the length of time she performs these tasks "varies" and "sometimes" she needs to sit and rest more frequently. (Tr. at 195). More significantly, Plaintiff's own testimony both at the ALJ hearing and in the balance of the record is itself clear and convincing evidence for a finding of non-disability. Plaintiff's

---

[4] Plaintiff correctly contends that looking for work is not the same as being able to perform work, (Doc. 18 at 8), but looking for work is evidence that Plaintiff considered herself physically capable of working, which in turn is evidence that tends to support the ALJ's decision when combined with other substantial record evidence.

self-reported daily activities and ability to work are inconsistent with her allegations that she cannot work.

Plaintiff's own testimony and reported daily activities were sufficient record evidence to support the ALJ's clear and convincing reasons for finding her subjective complaints not to be credible. The fact that the ALJ based his credibility assessment upon not only Plaintiff's testimony but also the treatment records of Dr. Baumann, and the opinions of Drs. Woodard and Griffith amply supports his findings.

Plaintiff additionally contends that the ALJ cherrypicked the evidence in concluding that Plaintiff's subjective complaints were not credible and erred in concluding from Plaintiff's self-reported daily activities that Plaintiff was capable of full-time work. (Doc. 14 at 11). But although daily activities do not necessarily translate into ability to perform full-time work, the ALJ may use them as evidence of such ability. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" serves as evidence of ability to work). The ALJ did not err when he found Plaintiff's subjective complaints not to be credible.

## V.     PLAINTIFF'S RFC

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. (Doc. 14 at 13). The ALJ determined that Plaintiff was capable of sitting for 15 to 30 minutes at a time, standing for 10 to 15 minutes at a time, and requiring a sit/stand option throughout the work day. (Tr. at 20). The ALJ found Plaintiff could lift occasionally 5 to 6 pounds with the right hand and up to 8 pounds with the left hand. (*Id.*)

Plaintiff contends the ALJ erred in not adopting her proposed RFC based upon certain hypothetical questions posed to the vocational expert ("VE"). (Doc. 14 at 16). Plaintiff testified at the hearing that she would need to lay down two or three times per eight-hour work day. (Tr. at 58). Plaintiff's counsel asked the VE whether such breaks would be tolerated in the workplace, and the VE stated that they would not be. (Tr. at 73). Similarly, the VE testified in response to the questions of Plaintiff's counsel that an

1  employer would not tolerate a one day per month absence past the fourth month of
2  employment. (*Id.*) The ALJ's failure to include these limitations in his RFC was not error
3  because they were not supported by substantial evidence. *See Robbins v. Soc. Sec.*
4  *Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to a vocational
5  expert, the ALJ must only include those limitations supported by substantial evidence.").

6  Substantial evidence showed Plaintiff's RFC to be consistent with the ALJ's
7  assessment. Dr. Baumann's treatment record from May 2011 showed Plaintiff had full
8  strength in her arms and legs, was not in acute distress, and her pain was alleviated by her
9  medication, heat, and TENS. (Tr. at 446). Dr. Woodard opined that Plaintiff could
10 perform sedentary work, (Tr. at 365-72), and Dr. Griffith agreed, (Tr. at 401). This was
11 substantial record evidence supporting the ALJ's determination that Plaintiff could
12 sustain sedentary work for an eight-hour work day. With respect to Plaintiff's ability to
13 sit and stand, Plaintiff testified at the hearing that she could sit for 15 to 20 minutes at a
14 time, stand 10 to 15 minutes before she needed to sit, and could lift a gallon of milk. (Tr.
15 at 52-53). This was substantial record evidence supporting the ALJ's assessment of
16 Plaintiff's RFC; indeed, the ALJ adopted these stated limitations. (Tr. at 20).

17 Plaintiff next argues that the ALJ misinterpreted medical terminology and
18 improperly substituted his own judgment for that of medical experts. (Doc. 14 at 17).
19 Plaintiff contends that the ALJ relied upon Dr. Baumann's notes that Plaintiff was in "no
20 acute distress" to conclude that Plaintiff's subjective complaints of chronic pain were less
21 credible. (*Id.* at 17-18). Plaintiff argues that the phrase "no acute distress" is a medical
22 term that a layperson is unqualified to interpret. (*Id.* at 18). Plaintiff undermines her
23 argument, however, because in attempting to show that "acute distress" has a specific
24 medical meaning, she cites to an ordinary, non-medical English dictionary for the
25 meaning of "acute." (*Id.* at 18 & n.1). Accordingly, Plaintiff fails to show that the proper
26 interpretation of the phrase's meaning is restricted to that of a trained medical witness,
27 and the ALJ cannot have erred in citing it as record evidence.[5]

28

---

[5] Plaintiff points to several other pieces of evidence in the record upon which she

Plaintiff contends that the ALJ erred by stating in his decision that Plaintiff's pain is improved by sitting down and that Plaintiff's side effects from her narcotic use are not particularly limiting. (*Id.* at 19-20). Plaintiff ignores, however, that the ALJ's decision need be supported only by substantial evidence and that as the fact finder, the ALJ was in a position to observe Plaintiff's functioning, demeanor, and presentation during the hearing and draw inferences therefrom. Moreover, although Plaintiff is correct that a lessening of pain upon sitting does not imply that pain is completely gone, (*id.* at 20), Plaintiff fails to show how the presence of an amount of pain justifies the conclusion that she is disabled.

Finally, the ALJ did not err in commenting upon Plaintiff's potential for future rehabilitation. *See* (*id.* at 21-22). Although the ALJ's comment that "the claimant may be able to rehabilitate herself with her remaining pain medications and continued use of conservative treatment measures including TENS therapy" if she were able to "wean herself from Morphine" may have been overly prognostic, it was not essential to the ALJ's decision-making process. The evidence shows that the ALJ's assessment of Plaintiff's RFC was based upon her present condition, including her dependence upon narcotic pain medication, and not upon any speculative future changes in her treatment. Accordingly, although Plaintiff is correct that the ALJ's comments would improperly serve as the basis for a medical conclusion, because these comments did not serve as a basis for the ALJ's decision, there is no error.

## VI. NEW EVIDENCE

Plaintiff asks the Court to consider new post-hearing evidence consisting of treatment records from Dr. Harvey Thomas. (Doc. 14 at 23). The Court may order "additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause

---

claims the ALJ improperly relied, including objective imaging tests. (Doc. 14 at 19-20). The Court has reviewed this evidence and finds nothing improper in the ALJ's reliance upon that evidence such that the ALJ's opinion is unsupported by substantial record evidence.

for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Such new evidence "must bear directly and substantially on the matter in dispute," and the claimant "must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation and internal quotation marks omitted). Because all of the additional treatment records document treatment occurring after the date of the ALJ's decision, Plaintiff cannot demonstrate there is a reasonable possibility that the evidence would have changed the ALJ's decision. Furthermore, Plaintiff cannot demonstrate that that the evidence is material because records that did not exist at the time of the ALJ's decision cannot bear "directly and substantially" on the dispute before the ALJ. The Court will not consider Plaintiff's new evidence.[6]

## VII. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 27th day of March, 2014.

James A. Teilborg
Senior United States District Judge

---

[6] Plaintiff's citation to *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985), (Doc. 18 at 11), is unhelpful because that case concluded that no good cause existed for considering evidence created after the ALJ's decision.

- 17 -